**LAFFEY BUCCI, KENT, LLP**
1100 Ludlow St. Suite 300
Philadelphia, PA 19107
215-399-9255
Brian D. Kent, Esq. bkent@laffeybuccikent.com
Michael J. McFarland, Esq.cvgdteam@laffeybuccikent.com
*Attorneys for John and Jane Doe, h/w/ and as parents of James Doe; Kevin and Karen Doe, as parents of Kathryn Doe, Michael Doe and Mary Doe; h/w, and as parents of Margaret Doe, Thomas Doe and Theresa Doe, h/w, and as parents of Timothy Doe, ("Doe Creditors/Plaintiffs)*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *In re*: | Chapter 11 (Subchapter V) |
| ST. PAUL'S EVANGELICAL LUTHERAN CHURCH, | Case No. 23-19463 (CMG) |
| | Honorable Christine M. Gravelle |
| *Debtor*. | Hearing Date: February 27, 2024 |

**THE DOE PLAINTIFFS/CREDITORS' RESPONSE IN OPPOSITION TO REPUBLIC FRANKLIN INSURANCE COMPANY AND UTICA MUTUAL INSURANCE COMPANY'S MOTION FOR MISCELLANOUS RELIEF [DOC. NO. 58]**

Pursuant to D.N.J. LBR 9013-2, John and Jane Doe, husband and wife ("h/w") and as parents of James Doe; Kevin and Karen Doe, h/w and as parents of Kathryn Doe; Michael Doe and Mary Doe; h/w, and as parents of Margaret Doe, Thomas Doe and Theresa Doe, h/w, and as parents of Timothy Doe, ("Doe Plaintiffs/Creditors" or the "Does")—parents and their minor children, who are victims of sexual abuse caused by St. Paul's Evangelical Lutheran Church— hereby respond in Opposition to Republic Franklin Insurance Company and Utica Mutual Insurance Company's (hereinafter "Utica" or "the Insurer") Motion for various forms of conflicting miscellaneous relief from this Court because it "it issued certain insurance policies [] to St. Paul's," [Doc. No. 58-1, ¶3], including Utica's current pursuit to seek an Order from this

Court forcing mandatory mediation of Doe Plaintiffs' underlying tort claims currently stayed in New Jersey State court against St. Paul's Evangelical Lutheran Church ("St. Paul's" or the "Debtor"). [*See* Doc. No. 58, 58-1].

In an attempt to have its cake, and it eat it, too, Utica seeks to control St. Paul's bankruptcy by attempting to force its own Insured and minor victims of sexual abuse to submit to "mandatory" mediation and a premature estimation of Doe Plaintiffs' tort claims, even while the Insurer has sought to avoid its obligation to indemnify St. Paul's for these very claims, rendering settlement a *de facto* impossibility and forcing St. Paul's into this Chapter 11 bankruptcy proceeding.[1] Further, Utica ignores the fact that Doe Plaintiffs and St. Paul's have already obtained permission from this Court to engage in mediation—a process in which Utica was invited to participate. [Docs. No. 45, 49].

The plain language of the Insurance Policies ("the Policies") held by St. Paul's and issued by Utica indemnifies St. Paul's against Doe Plaintiffs' Abuse and Molestation claims, including Sexual Misconduct and Sexual Molestation, obliviating the need for Chapter 11 Bankruptcy by fully preserving the Debtor's Estate. *See Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 478 (5th Cir. 1994). Notwithstanding the Insurer's current unreasonable position, Debtor and Doe Plaintiffs have mediated on numerous occasions, with the participation of Utica, and, having obtained the permission of the Court, will be attempting to mediate and resolve the underlying claims again. If successful, and if the automatic stay of the underling cases is lifted by this Court for the sole purpose of conducting a hearing pursuant to *Griggs v. Bertram*, 88 N.J. 347 (1982), then St. Paul's and the Doe Plaintiffs will make a motion to enforce pursuant to Rule 9019 of the Federal

---

[1] [Doc. No. 41, ¶ 30 ("The Debtor is keenly aware that it may not have sufficient funds to continue to appeal (or defend an appeal) the pending declaratory judgment action re regarding the existence of insurance coverage, in addition to defending the underlying claims of the Doe Creditors.")]

2

Bankruptcy Rules, as within the best interest of St. Paul's/the Debtor's estate. [Doc. No. 41, 42]; *see also Martin v. Myers (In re Martin),* 91 F.3d 389, 393 (3d Cir. 1996). For the reasons stated herein, Doe Plaintiffs/Creditors respectfully request for this Court to deny all relief requested by Republic Insurance Companies' motion [Doc. No. 58] and to instead issue the Proposed Order attached hereto, granting St. Paul's Motion [Doc. No. 41], lifting the automatic stay of the underlying State Court proceedings under 11 U.S.C. § 362 so that the parties may engage in a *Griggs* mediation and/or hearing, and for any other relief the Court deems just and proper under the circumstances.

## I. PRELIMINARY STATEMENT

Since January 24, 2017, Doe Plaintiffs have been prosecuting New Jersey tort claims against St. Paul's and related Defendants, based on the sexual abuse the minor victims/Doe Plaintiffs suffered at the hands of St. Paul's teacher's aide and employee while the children attended St. Paul's preschool in in 2014 to 2016. *See* Declaration of Brian D. Kent, 2/20/24. The minor Doe Plaintiffs/victims were children of only three and four years of age when they were sexually abused by St. Paul's employee Christopher Evans, who was hired and retained by St. Paul's as a teacher's aide despite documented history of abusive and predatorial behavior toward children. St. Paul's and its preschool had actual knowledge of Evans' sexual misconduct and should have known that its employee, Evans, had sexually abused young children prior to being hired as a teacher's aide to young children. St. Paul's had knowledge—through its agents, and through parental reports to its agents and employees—that Evans was openly committing misconduct and acting inappropriately with young children left in his care at St. Paul's. Despite knowledge of Evans' misconduct towards very young children, St. Paul's granted Evans continuous and unobstructed access to unsuspecting children and families at St. Paul's preschool, where Evans

3

foreseeably groomed, abused, and molested minor Doe Plaintiffs (and perhaps other child victims) over the course of months and years.

Despite initiating a Declaratory Judgment action in New Jersey state court, in an attempt to disclaim indemnification to St. Paul's under the abuse and molestation policy held by St. Paul's, Utica now seeks various conflicting forms of relief from this Court because it "it issued certain insurance policies [] to St. Paul's." [Doc. No. 58-1, 3]; *see also Republic Franklin Ins. Co., et al., v. St. Paul's Evangelical Lutheran Church*, Docket No.: MID-L-006428-19 (Superior Court of New Jersey, Law Division, Middlesex County). In spite of its current assertion that it has no obligation to indemnify St. Paul's for the Doe Plaintiffs underlying Tort claims Utica now asks the Court: "For an Order (i) Establishing Mediation Process Relating to Tort Claims, Or, Alternatively (ii) Estimating Remaining Tort Claims Pursuant to 11 U.S.C. § 502(c)(1) and Fed. R. Bank. P. 3018(a) for Purpose of Distributions under Plan of Reorganization and Confirmation Process; and (iii) Granting Related Relief." [Doc. No. 58]

Notwithstanding Utica's attempt to conflate the issues and confuse the Court (and the minor victims of sexual abuse), one principle remains true: the Abuse and Molestation Policy issued by Utica indemnifies St. Paul's for Doe Plaintiffs' sexual abuse and molestation-based claims against St. Paul's. [*See, e.g.,* March 1, 2017, Indemnification and Reservation of Rights Letter, attached as Exhibit "A," (Section 1- Abuse or Molestation Liability Coverage (Including Sexual Misconduct or Sexual Molestation)]. Another truth: the Debtor/St. Paul's Estate would not qualify for Chapter 11 Bankruptcy protections if Utica had properly indemnified St. Paul's under the Policies, as it contracted to do, because the Debtor's Estate would have been preserved in that scenario. [*See* Doc. No. 1, Doc. No. 41, ¶¶ 30-31]. Additionally, "mandatory mediation" and an estimation of the remaining torts claims at Utica's demand is impossible to logically square with the Insurer's

4

current position that no coverage is afforded to St. Paul's under the Abuse and Molestation Policy for Doe Plaintiffs' claims. What standing does Utica have to require an estimation of tort claims it (erroneously) claims it is not responsible to indemnify? Utica's Motion is just the latest and egregious example of talking out of both sides of its mouth in order to delay resolution of Doe Plaintiffs' claims and prevent child victims of sexual abuse from obtaining justice. St. Paul's and Doe Plaintiffs have already obtained the Court's permission to attempt to mediate these claims—and invited Utica to participate. [*See* Doc. No. 49]. Utica cannot demand that this Court impose parameters on a proceeding (1) in which it has no willingness to participate and (2) in which, by its own position, has not ability to participate.

For the reasons stated herein, Doe Creditors/Plaintiffs respectfully request for this Court to deny all relief requested in Utica's improper motion [Doc. No. 58], and to alternatively issue an Order finding granting St. Paul's Motion [Doc. 41]. Doe Plaintiffs also join in supporting St. Paul's request for the 11 U.S.C. § 362(a) automatic stay to be terminated to allow for mediation and a potential hearing pursuant to *Griggs v. Betram*, 88 N.J. 347, 443 A.2d 163 (1982), and its progeny, and for any other proper relief under the circumstances.

## II. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### a. Does v. St. Paul's

On January 24, 2017, the Does filed sexual abuse-based tort claims against numerous defendants including St. Paul's and its preschool in the Superior Court of New Jersey, due to the serious and serial sexual abuse the minor Doe victims suffered at the hands of St. Paul's employee and teacher's aide while the Doe victims attended St. Paul's preschool as three- and four-year-old children, and were tragically sexually victimized by a grown man entrusted with their care (and enabled by other St. Paul's agents). *John Doe and Jane Doe, et al. v. St. Paul's Evangelical*

5

*Lutheran Church of America*, Docket No.: L-551-17, (Superior Court of New Jersey, Law Division). On March 1, 2017, Utica issued its "Partial Disclaimer and Reservation of Rights," which cited the Abuse and Molestation policy and summarized that St. Paul's was indemnified for several of Plaintiffs' claims due to the Abuse and Molestation Policy, which specifically covers acts of sexual abuse and molestation. [*See, e.g.,* March 1, 2017, Indemnification and Reservation of Rights Letter, Exhibit "A."]. Utica thereafter controlled St. Paul's defense in the underlying tort action for years,

After several years of reliance upon Utica's partial indemnification of Plaintiffs' claims, on May 27, 2021, the Insurer fully disclaimed coverage to St. Paul's [*See, e.g.,* May 27, 2021, Disclaimer of Coverage Letter, Exhibit "B."], but continued—for reasons unknown even to Utica's own corporate designee—to provide a legal defense to St. Paul's. Trial of the Does' Tort claims was scheduled to begin on October 30, 2023. However, trial was automatically stayed pursuant to 11 U.S.C. § 362(a), which St. Paul's initiated via Chapter 11 Bankruptcy Petition on October 26, 2023. [Doc. No. 1].

    b. **Utica v. St. Paul's**

Despite not communicating anything to its Insured regarding Utica's coverage position changing since its initial March 2017 position, on September 12, 2019, Utica filed a Declaratory Judgment Action against St. Paul's seeking a declaration that the Policies covering sexual abuse and molestation do not indemnify its insured for abuse and molestation claims. *Republic Franklin Ins. Co., et al., v. St. Paul's Evangelical Lutheran Church*, Docket No.: MID-L-006428-19 (Superior Court of New Jersey, Law Division, Middlesex County). Doe Plaintiffs thereafter intervened as third party beneficiaries to the insurance policies Utica issued to St. Paul's. During the pendency of this litigation, Utica then completely disclaimed coverage to St. Paul's on May

27, 2021. [*See* Exhibit "B"]. The court in the Declaratory Judgment Action has held its ruling on the parties' respective motions for summary judgment in that matter in abeyance pursuant to the automatic stay under 11 U.S.C. § 362.

### c. Instant Bankruptcy Petition

After over *seven* years of prosecuting these claims in New Jersey state court, and engaging in unrelenting motion practice, on October 26, 2023, St. Paul's filed its voluntary petition pursuant to Chapter 11, subchapter V, of the United States Bankruptcy Code. [Doc. No. 1] because of the uncertainty relating to Utica's coverage position and the impending trial on the Does' claims. On December 26, 2023, the Debtor/St. Paul's filed a Motion for the entry of an Order approving the Settlement Agreement with the Doe Creditors/Plaintiffs. [*See* Doc. No. 41, 42]. On January 19, 2024, this Court entered an Order granting application to employ Glenn Berman as Mediator for the potential resolution of Doe Plaintiffs' claims against St. Paul's. [Doc. No. 49].

### III. LEGAL ARGUMENT

First, Utica improperly seeks the best of both worlds—Utica controlled the legal defense of St. Paul's in the Does' underlying tort action since 2017, despite its complete disclaimer of coverage in 2021, and now the also seeks to control the bankruptcy it caused by its bad faith denial of indemnification to St. Paul's under its Abuse and Molestation Policy. Utica has spent several years and countless judicial resources in two New Jersey Courts disclaiming the very insurance policy coverage it now cites to demand relief from this Court, in contravention of its Insured's interest, the Debtor's estate, and the interests of all potential Creditors. St. Paul's must be able to mediate with the Doe Plaintiffs and the automatic stay pursuant to 11 U.S.C. § 362 should be lifted to allow such a process, including a potential *Griggs* hearing if the settlement procedure outlined therein is successful as it is in the best interest of St. Paul's Estate.

Utica's improper attempt to circumvent the Does' right to trial by jury in New Jersey court and the Doe Creditors' right to be compensated for their claims of sexual abuse, while Utica also attempts to control not only St. Paul's defense in the underlying tort action, but also St. Paul's Chapter 11 Bankruptcy is an abuse of the United States Bankruptcy Code and process. Utica's Motion for miscellaneous and conflicting relief [Doc. No. 58] should therefore be denied.

**(1) The Abuse and Molestation Policy Indemnifies St. Paul's for the Does' Claims**

First, the Court could finally simplify this matter by issuing an Order pursuant to 11 U.S.C. § 105(a) finding that St. Paul's was insured under general liability insurance as well as excess coverage insurance policies of Abuse and Molestation with Utica. Despite clarity in the plain language of the Policies on this issue, the Insurer has (obtrusively, at best) disclaimed insurance coverage surrounding the underlying Does' sexual abuse claims in State courts in New Jersey court for several years—since the 2019 Declaratory Judgment Action was filed and then again after its May 27, 2021, Disclaimer of Coverage. During the time period of the abuse and molestation of minor Plaintiffs, in addition to General Commercial Liability Coverage, St. Paul's purchased and paid for an Abuse and Molestation insurance policy covering the time period of Does claims. [*See* Doc. No. 41]. The "Abuse and Molestation" Liability Coverage Form explicitly states that it includes sexual misconduct and sexual molestation. Exhibit "A," p.3.

On March 1, 2017, Utica issued its "Partial Disclaimer and Reservation of Rights," which cited the Abuse and Molestation policy and summarized that the "Company will provide a defense with limited indemnification under the ABUSE AND MOLESTATION LIABILITY COVERAGE FORM and EXCESS/UMBRELLA WRONGFUL ACTS COVERAGE (INCIDENT BASIS)." [*See, e.g.,* March 1, 2017, Indemnification and Reservation of Rights Letter, Exhibit "A."]. Utica had it right the first time: the Abuse and Molestation Policies, including sexual misconduct and

8

sexual molestation, indemnified St. Paul's for the Does' abuse and molestation-based claims of its predator/employee, Evans. No facts were developed since the issuance of that letter which changed that coverage analysis nor triggered any exception to the policy. An Order clarifying this simple issue of coverage would potentially obliviate the need for any Chapter 11 bankruptcy proceedings, altogether, by fully preserving the Debtor's Estate. *See Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 478 (5th Cir. 1994).

Under Section 105(a) of the Bankruptcy Code, the Court has expansive equitable power to fashion any Order or Decree that is in the interest of preserving or protecting the value of the debtor's asserts. *See Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 478 (5th Cir. 1994). Section 105 is the "basis for the broad exercise of power in the administration of a bankruptcy case. The basic purpose of § 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of its jurisdiction." *In re Davis,* 170 F.3d 475, 492 (5th Cir. 1999). To the extent that Utica improperly seeks to yet again have it both ways to the detriment of St. Paul's Estate, the Court should issue an Order pursuant to 11 U.S.C. § 105(a) finding that St. Paul's is indemnified regarding Doe Plaintiffs'/Creditors' claims.

**(2) Republic Insurance Company is Not Entitled to an Estimation of Claims Under 11 U.S.C. § 502**

Furthermore, Utica also attempts to demand an estimation of claims under 11 U.S.C. § 502. That section states: "there shall be estimated for purpose of allowance under this section – (1) any contingent or unliquidated claims, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case" or "(2) any right to payment arising from a right to an equitable remedy for breach of performance." First, Utica lacks standing to require an estimation of tort claims it argues it is not responsible to indemnify. Although the Court has the inherent and statutory power to estimate Doe Plaintiffs' claims, for the reasons stated above in Section (1), any

9

estimation of tort claims is premature without an initial determination on the issue of coverage under the Policies, specifically the Abuse and Molestation that covers sexual misconduct and sexual molestation. *See supra*. The only undue delay at hand is Utica's obstructive filings. The Insurer's motion should be denied.

**(3) Pursuant to Rule 9019(a) of the Federal Bankruptcy Rules, St. Paul's Motion [Doc. No. 41] Should be Granted and the Automatic Stay Should be Terminated for that Limited Purpose**

This Court has already approved a mediator to potentially settle Doe Plaintiffs' claims against St. Paul's. [Doc. No. 49]. The proposed Mediation Procedure between the Doe Plaintiffs and St. Paul provides that the Does and St. Paul have agreed to pursue a *Griggs* mediation, and, if successful, a *Griggs* hearing in New Jersey state court would be necessary, pursuant to *Griggs v. Betram*, 88 N.J. 347, 443 A.2d 163 (1982), and its progeny. Under the proposed Mediation Procedure, the parties have agreed that the results of the *Griggs* Mediation, if successful, and then approved by the State Court Judge's confirmation of the resolution, would constitute the final resolution of the Doe Creditors' claims, and the Doe Creditors would only seek payment of the approved claims from Utica.[2] [Doc. No. 41, 42]

Under Fed. Bankr. Rule 9019(a), a bankruptcy Court may approve a compromise or settlement upon motion and after notice and a hearing, and court in this District routinely approve settlements in bankruptcy cases. [*See* Doc. No. 41]. In deciding whether a settlement should be approved, the Court determines whether it is in the best interests of the debtor and the debtors estate. *See In Re Adelphia Communications Corp.*, 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005). St.

---

[2] In the event that the *Griggs* mediation would not be successful, or the State Court Judge would not approve a resolution reached at mediation, the positions of the Doe Creditors and the Debtor would revert back to their respective positions prior to the execution of their Agreement , with all rights reserved going forward. [Doc. No. 41, 42]. The Debtor's Chapter 11 proceeding would continue with the Doe Plaintiffs being creditors in the Chapter 11 proceeding, as if there had been no Agreement to attempt a *Griggs* mediation. [Doc. No. 42]

10

Paul's proposal to engage in mediation would be in the best interest of the Debtor and its Estate.

Doe Plaintiffs also join in St. Paul's request for the 11 U.S.C. § 362(a) automatic stay of *John and Jane Doe, et al. v. St. Paul's Evangelical Lutheran Church of America*, Docket No.: L-551-17, to be terminated to allow *only* for mediation (and, potentially, a subsequent hearing) pursuant to *Griggs v. Betram*, 88 N.J. 347, 443 A.2d 163 (1982), and its progeny. [Doc. No. 41, 42].

## CONCLUSION

**WHEREFORE**, the Doe Plaintiffs respectfully request for this Honorable Court to deny Utica's motion for relief [Doc. No. 58], grant St. Paul's Motion to Approve Settlement [Doc. No. 41], and lift the automatic stay issued pursuant to 11 U.S.C. § 362(a), so that the parties may attempt to mediation, settle, and have said potential settlement approved by court order pursuant to *Griggs v. Betram*, 88 N.J. 347, 443 A.2d 163 (1982), and its related progeny. For the reasons herein, Utica's motion should be denied.

Dated: February 20, 2024

By: */s/ Brian D. Kent*
    Brian D. Kent, Esquire

**LAFFEY BUCCI, KENT, LLP**
1100 Ludlow St. Suite 300
Philadelphia, PA 19107
215-399-9255
Brian D. Kent, Esq.
bkent@laffeybuccikent.com
Michael J. McFarland, Esq.
cvgdteam@laffeybuccikent.com
*Attorneys for ("Doe Plaintiffs/Creditors)*